UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

——

ROBERT PLASTER,

                  Plaintiff,                  Case No. 2:15-cv-14

v.                                    Honorable Gordon J. Quist

DANIEL HEYNS, et al.,

                  Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Robert Plaster, a state prisoner currently confined at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Daniel Heyns, Warden W. Rapelije, Warden Jeffrey Woods, Librarian E. Bell, Grievance Coordinator R. Vittitow, Special Education Teacher S. Eschenwick, Library Manager A. Winnicki, Assistant Deputy Warden J. Miller, Grievance Coordinator M McLean, Chaplain T. Beavers, Deputy Warden of Programs D. Ricumstrict, Social Worker Emily Simbeck, Qualified Mental Health Professional S. Shipman, Library Tech Christine M. Henson, Social Worker M. Chapin, Nurse Penny L. Filion, R.N., Northern Region Mental Health Services Director Tom Osier, Mental Health Unit Chief Kyle D. Woods, Health Unit Manager Melissa LaPlaunt, R.N., Legislative Ombudsman Keith Barber, Grievance Specialist Kent Austin, and R. Russell.

Plaintiff alleges in his complaint that while he was confined at the Saginaw Correctional Facility on March 6, 2013, he asked Defendant Librarian Bell for books on "media player" and a legal writer because he has a mental disability.  Defendant Bell mocked Plaintiff, so Plaintiff filed a grievance on him.  Plaintiff's grievance was responded to by Defendant Eschenwick, who noted that Plaintiff had not submitted a written request for a legal writer and his eligibility for books on tape had not been verified.  Plaintiff's grievance was denied at each step by Defendants Vittitow, Rapelje, and Austin.  In the step II denial, Defendant Rapelje stated:

> The Step I Respondent found Grievant has yet to request the Legal Writer, even though he has visited the law library numerous times. A "Books on Tape" application has been forwarded to Health Care for certification from a Qualified Health Care Professional.  As of this date, the form has not been returned to the Librarian so therefore no action has been taken to obtain any materials.  The grievance has no merit.

Grievant appeals to Step II disputing he has not requested a Legal Writer. Grievant claims he was told he did not need one as he has been coming to the law library. Grievant questions why a Health Care professional needs to review his disability. Grievant states it is a learning disability.

The record has been reviewed on appeal.

The Certificate of Eligibility and Application for Library Materials has been reviewed by a Qualified Health Care Professional. It was found Grievant did not meet the criteria as required to be eligible. The Librarian will determine if Grievant qualifies for access to the Legal Writer.

*See* docket #1-1, p. 8 of 100.

On May 23, 2013, Plaintiff requested the assistance of a legal writer, but he was told that he was not eligible. On May 28, 2013, Plaintiff requested that the legal writer assigned to him help him with a brief that had been written by another inmate. In the June 12, 2013, step I response to grievance SRF 2013 05 0923 14Z, Defendant Beavers noted:

Inmate Plaster was ineligible for legal writer assistance initially due to receiving a GED or High School Diploma. OPT [out-patient mental health team] was sent a screening form, and he was qualified by them for Legal Writer assistance on May 8, 2013.

On May 13, inmate Plaster was scheduled to see the legal writer. Inmate Plaster informed the legal writer that he had an appellate attorney, but wanted to file a Standard 4 Supplemental brief. The brief was prepared by someone else and inmate Plaster wanted the legal writer to type his brief. The legal writer informed inmate Plaster that he would not type a pleading prepared by someone else.

As per PD 05.03.116, Prisoners' Access to the Courts, the Legal Writer Program does not provide a typing service to inmates. The law firm which oversees the Legal Writer Program confirmed to the legal writer that he was not to type a pleading prepared by someone else, but could advise how to file the pleading with the court, if needed.

On May 29, inmate Plaster met with the legal writer again requesting that two documents prepared by someone else be typed by the legal

writer.  He was informed that this program is not a typing service.  Of the four requests made by inmate Plaster, the Legal Writer Program will assist with two of them.  A motion for transcripts, and a letter to his court-appointed attorney requesting a motion for extension of time.

On June 5, 2013, inmate Plaster met with the legal writer and received a letter to his court appointed attorney that was prepared by the legal writer.  Inmate Plaster is not the only inmate requesting assistance through this program, and he will be scheduled as time and urgency permits.

Inmate Plaster has consistently received assistance through the Legal Writer Program for eligible services and, in addition, he has a court-appointed attorney that is working on his case.

Interviewed inmate Plaster, He claims he was only partially assisted by the Legal Writer.  He was reminded that Library staff has followed policy and helped him where they could.  The legal Writer [sic] is not a typing service, but inmate Plaster says that he has a learning disability and he has to have someone else in the unit help him and so he brings a pleading prepared by someone else.  He was informed that this violates the rules for what the Legal Writer worker can help him with.  He claims he is still dissatisfied with the program and wants to pursue this grievance.

*Id.* at pp. 20-21 of 100.  Defendant Rapelije denied Plaintiff's step II appeal and Defendant Russell

denied Plaintiff's step III appeal.  *Id.* at pp. 27-31 of 100.

On September 4, 2013, while confined at the Chippewa Correctional Facility (URF),

Plaintiff applied for books on media player, asserting that he was in the remedial class in school and

had learning disabilities.  Defendant Winnicki instructed Plaintiff on how to apply:

Federal government Library of Congress materials for the blind and physically handicapped, for all users in the state of MICHIGAN are now administered by the <u>Department of Labor and Economic Growth</u>.  This program called **<u>Service for the Blind and Physically Handicapped - SBPH</u>**.

All users of SBPH services, who are housed by the Michigan Department of Corrections (prisoners), must be qualified for SBPH.

I have provided you with the application form fill out the highlighted
areas and return this form to the URF Library.

*Id.* at p. 37 of 100.

Health Services determined that Plaintiff did not meet the eligibility requirements.
Plaintiff filed a grievance, which was denied by Defendant Henson on October 23, 2013. *Id.* at p.
35 of 100. Defendant Woods responded to Plaintiff's step II appeal, stating that he had contacted
the school and discovered nothing in Plaintiff's school file indicating that he had a learning
disability. Woods further noted that Plaintiff had a high school diploma. Based on the lack of
evidence that Plaintiff qualified for SBPH, Defendant Woods denied the step II appeal. *Id.* at p. 41
of 100. However, the attachments to Plaintiff's complaint include a memo from Defendant Henson
dated November 14, 2013, which states that Plaintiff had been approved for the Services for the
Blind and Physically Handicapped. The memo further states that Plaintiff would be placed on a
library call out when his media player arrived. *See* docket #1-2, p. 19 of 34.

The exhibits to Plaintiff's complaint show that while at URF, he was initially denied
legal writer assistance because he had received a GED. *See* docket #1-1, pp. 62, 68, 74, 80 of 100;
docket #1-2, pp. 12, 23 of 34. However, it is clear from the attachments to Plaintiff's complaint that
at some point, he was approved for the legal writer program. On March 10, 2014, Plaintiff requested
a legal writer to help with a child custody case. Plaintiff's request was denied. Plaintiff filed a
grievance. In response to the grievance, Defendant Winnicki stated that custody and divorce cases
are not covered services and that the Legal Writer program is provided solely for criminal appeals
and conditions of confinement. *Id.* at p. 50 of 100. In the response, Defendant Winnicki further
stated that Plaintiff "has been qualified to receive legal writer assistance and if he has issues that are

- 5 -

covered by this program then assistance will be promptly provided." *Id.* This denial was upheld at steps II and III. *Id.* at pp. 54-58 of 100.

Plaintiff also complains that he was denied the use of a typewriter on October 16, 2013, which denied him access to the courts. Plaintiff filed a grievance on this matter, which was responded to by Defendant Henson on October 23, 2013. In the response, Defendant Henson notes that MDOC policy does not require law libraries to provide typewriters and that Plaintiff failed to show that the lack of a typewriter impeded his access to the courts. *Id.* at p. 92 of 100. Plaintiff's step II appeal was denied on the same basis by Defendant Woods:

> There is no legal or policy requirement to provide typewriters for prisoner use. MDOC prisoners are allowed to purchase and use personal typewriters. The URF Prisoner Benefit Fund does purchase and maintain typewriters for general population use in the West Library. However, the East Library does not have typewriters. As stated in URF 1310 2979 14Z, if grievant disagrees with the denial of the Legal Writer Services he may contact Health Services for screening. There has been no evidence presented to support grievant's allegation that he is being denied access to the court and grievant has provided nothing to the contrary.

*Id.* at p. 96 of 100.

Plaintiff asserts that Defendants violated his rights under the First, Eighth and Fourteenth Amendments, as well as his rights under the Americans with Disabilities Act (ADA). Plaintiff seeks compensatory damages, injunctive relief, and costs.

**Discussion**

I.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v.*

- 7 -

*Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants violated his First Amendment right of access to the courts after he was prohibited from receiving the assistance of a legal writer.  It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416. Plaintiff in this case fails to allege any facts showing that he suffered such prejudice in a direct appeal, civil rights action, or habeas corpus action. Therefore, his First Amendment claims are properly dismissed.

Plaintiff further claims that Defendants violated his Eighth Amendment rights. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction

of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The allegations set forth in Plaintiff's complaint fail to show such a serious deprivation. Therefore, his Eighth Amendment claims are properly dismissed.

In addition, Plaintiff claims that Defendants violated his due process rights under the Fourteenth Amendment. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

A careful review of the attachments to Plaintiff's complaint, establishes that if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received

- 10 -

due process of law.  In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law.  This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false.  The Due Process Clause does not guarantee that the procedure will produce a correct decision.  "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980).  "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).  In this case Plaintiff claims that he has a learning disability and was improperly denied books on media player as part of the SBPH and the assistance of a legal writer.  However, Plaintiff filed grievances appealing the denial of these services and was eventually rewarded with inclusion in both programs.  Therefore, Plaintiff's due process claims are properly dismissed.

Finally, Plaintiff claims that Defendants violated his rights under the ADA.  Plaintiff contends that MDOC officials have deprived him of participation in the Legal Writer Program and in the Services for the Blind and Physically Handicapped (SBPH).  Title II of the ADA provides

> . . . that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  § 12132 (2000 ed.).  A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of

architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Act defines "'public entity'" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State," § 12131(1). [The Supreme Court has] previously held that this term includes state prisons. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

*United States v. Georgia*, 546 U.S. 151, 153-54 (2006). Thus, to state a claim under the ADA, a plaintiff must show that he is "(1) disabled under the statute, (2) otherwise qualified for participation in the program, [services or activities], and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under[,] the program, [services, or activities] by reason of his disability." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008). The MDOC is not necessarily immune from a damages claim under the ADA, because Title II abrogates state sovereign immunity for claims based on "conduct that actually violates the Fourteenth Amendment[.]" *Georgia*, 546 U.S. at 159.

Assuming that Plaintiff's "learning disability" is a disability under the ADA, it is clear from the attachments to Plaintiff's complaint that after seeking review of the initial denials and presenting evidence of his learning disability, Plaintiff was granted access to books on media player as part of the SBPH, as well as access to the Legal Writer Program. Plaintiff fails to allege any facts showing that he has been discriminated against, or that he has been unable to participate in or receive the benefit of a service, program, or activity available to other inmates by reason of his disability, as is necessary to state a claim under the ADA. Instead, Plaintiff's difficulty in receiving assistance appears to have been lack of evidence showing that he was actually suffering from a qualified disability. Therefore, Plaintiff's ADA claim is properly dismissed.

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  April 16, 2015                          _____/s/ Gordon J. Quist_____
                                                GORDON J. QUIST
                                                UNITED STATES DISTRICT JUDGE